## CHARLES A. KING & COMPANY
v.
ALONZO LUCKEY & COMPANY.

*Action by Broker to Recover Advances—Gambling Transactions—Options—Evidence.*

In an action by a broker to recover advances made to cover losses on purchases and sales of corn ordered by the defendants, it is *held:*    That the instructions as to the strictness with which said orders should be construed were erroneous as applied to the case presented; that under the evidence the transactions in question were not gambling transactions, and that certain evidence as to the "kind" of transactions between the parties was improperly admitted.

[Opinion filed August 26, 1886.]

IN ERROR to the Circuit Court of Champaign County; the Hon. J. W. WILKIN, Judge, presiding.

Mr. FRANCIS M. WRIGHT, for plaintiffs in error.

Messrs. T. J. ROTH and J. L. RAY, for defendant in error.

The plaintiffs' account and the evidence in the case show clearly that these were gambling contracts.    Lyon v. Culbertson, 83 Ill. 33 ; Webster v. Sturges, 7 Ill. App. 560.

And as to the plaintiffs not having filled their part of the contract, whether legal or illegal, preventing a recovery, it is entirely superfluous to cite authorities.

PLEASANTS, P. J.   Plaintiffs in error owned an elevator and did a general commission business in grain at Toledo, Ohio, and defendants bought and shipped at Rantoul, Illinois.   In May, 1881, the parties made an arrangement whereby King & Company were to advance money to Luckey & Company to purchase corn which was to be shipped to them for sale, and to have interest at the rate of eight per cent. per annum on daily balances due and one cent per bushel for selling.   Defendants had no elevator but bought as they could by wagon loads and by contracts with farmers, on which they obtained advances from plaintiffs, and ordered sales in advance of shipments, and in some instances purchases also, to meet contracts of sales so made.   For advances made on losses upon such transactions plaintiffs in error brought this suit, in assumpsit, on the common counts.   Penfield was defaulted.   Luckey filed the general issue and also a special plea that the promises declared on were all made in consideration of gambling contracts for the purchase and sale of options and differences in market values of grain at a future time, etc.   Upon a verdict for the defendant, the court refused a new trial and entered judgment.

The account between the parties embraced other items, but those which constitute the balance claimed and are the subject of this controversy are these: .

July 22, 1881.   Loss, August 10, corn, purchase and
    sale..................:.........................................$287.00
August 5, 1881.   Loss, August 2, corn, purchase and
    sale...... ................................................. 30.00
August 20, 1881.   Loss, August 8, corn, purchase and
    sale........... ........................................... 910.00

It is not denied that these purchases and sales were made, or that losses were sustained and advanced thereon as charged, but it is insisted, first, that they were gambling contracts, and second, that there was no authority whatever for the purchase referred to in the last item, and that the others were not in strict pursuance of the orders given.

Four telegrams from defendants to plaintiffs were introduced as follows: June 11, 1881, "Sell five August corn;" June 16, 1881, "Sell five August corn;" July 22, 1881, "Buy twelve thousand August corn," and of same date, "Sell ten August corn." It appears that upon receipt of these, respectively, plaintiffs made the sales and purchase as therein directed, but the purchase was made in two lots, 10,000 in one and two in another; and further, that the defendants having failed to ship any grain for delivery on these sales they also purchased the deficient amount of 8,000 bushels, in two lots of five and three. There was positive and uncontradicted testimony that Penfield, in the absence of Luckey, expressly directed the purchase of the 8,000 bushels, but the telegram was not produced nor its absence explained. Defendants however made no objection to the evidence.

Upon this state of the proof the court gave these instructions at the instance of defendants:

1. "That an order to sell corn does not authorize the purchase of corn, and an order to purchase corn does not authorize the sale of such corn when bought; and if you believe from the evidence in this case that when Luckey & Co. ordered plaintiffs to sell corn, the plaintiffs, without other authority or orders, went on the market and bought that amount of corn and then sold it again, and thereby loss occurred, that such losses can not be recovered of the defendants in this case.

2. "That an order to buy or to sell a certain amount of grain must be strictly complied with in order to charge the party making the order, and an order to sell 10,000 bushels of corn does not of itself authorize the sale of 8,000 bushels, or any other amount than 10,000 bushels, and does not authorize the purchase of grain for the purpose of making such sale; and therefore, if you believe from the evidence in this case that the defendants ordered the plaintiffs to sell 10,000 bushels of corn, and that the plaintiffs thereupon, without other or different authority or orders, went and bought 8,000 bushels of corn or any other amount, and then sold it again, and thereby a loss occurred, the plaintiffs can not recover such loss of defendants."

King & Co. v. Luckey & Co.

We must think these instructions as applied to this case are quite erroneous. There is no dispute that these contracts for sale and purchase were all made in June and July, and were for August delivery; that the orders were to contract for the delivery, in August, of 20,000 bushels; that when the time for delivery came plaintiffs had, until they purchased the 8,000 bushels objected to, only 12,000, and that the deficit was due to the neglect of the defendants alone. Having then, at the instance of the defendants, become personally bound to deliver these 8,000 bushels also, the plaintiffs were by these circumstances impliedly authorized to procure them at the charge of the defendants. So that while the legal proposition of the instruction may be sound in the abstract, it is wrong as applied, in that the hypothesis of fact contained therein wholly ignores these grounds of authority. The assumption, in the second instruction, that upon an order to sell 10,000 bushels the plaintiff sold only 8,000, is altogether unwarranted. They bought 8,000 to make it up, with the 2,000 remaining of the 12,000 after 10,000 were delivered upon the two orders for the sale of 5,000 each; the other 10,000 they were ordered to sell and did sell.

From the evidence it is clear to our minds as matter of fact that plaintiffs strictly complied with all the orders given, and as matter of law, without reference to the evidence of Penfield's order, that they were fully authorized to make the purchase of the 8,000 bushels.

But the main question is whether these were gambling transactions within the meaning of the statute.

Upon this question three witnesses were examined. Mr. Southworth who was, during the period covered by these transactions and for sixteen years had been in the employ of plaintiff and had kept the accounts between these parties, testified most clearly and positively that these were purchases and sales of grain, actual and *bona fide*, in contemplation of its delivery and receipt, and not of settlement by payment or receipt of differences of market values, and that warehouse receipts therefor, of the full amount in each case, were delivered or received by the plaintiff; that they had never in any in-

stance, to his knowledge, dealt in options or made contracts to be settled by the receipt or payment of differences, and that in these cases they expected and had reason to expect shipments from the defendants to meet the sales; that several car loads were received by them between the dates of sale and delivery, but with orders accompanying or following each to sell them on the market in order to get the better prices ruling at the time, letting the sales for August delivery stand in the hope of getting enough of other corn in the country to fill them. Mr. Penfield, one of the defendants, testified that he understood and intended these telegrams as orders for real transactions and not for unlawful options.

Mr. Luckey's testimony was in the form of a deposition. The most material of the interrogatories, respecting the several transactions referred to in the items of charge and his answers thereto, were objected to, but admitted. The following, respecting the first, is not an unfair sample. He was asked to " explain what kind of a contract and transaction this was, and state fully whether you purchased of or sold to the plaintiffs said 10,000 bushels of corn, or whether any corn was in fact bought or sold or not in that transaction," and answered " This was an option or future contract. I did not purchase or sell any corn in connection with that transaction, neither did they purchase or sell any corn on my account in that transaction, nor was there in fact any corn purchased or sold by anybody in connection therewith."

The item does not import nor was it ever claimed that defendants purchased of or sold to plaintiffs these 10,000 bushels or any other corn. It was hardly within the province of the witness to explain or state of what " kind " was the contract or transaction in question. He should have been confined to a statement of the contract or transaction itself, leaving to the jury to determine from the facts, under the instruction of the court, whether it was or was not of the kind known to the law as option contracts. He could not have personally known, and it does not appear upon what other grounds, if any, he states, what the plaintiffs did not do and what was not done by anybody in connection therewith.

He proceeded to characterize the other transactions here

involved in like manner and to tell what were and were not the intentions and acts of the plaintiffs and the other parties to the alleged contracts, as freely as of his own, but does not intimate that he was present on any occasion so referred to, nor state as of his own knowledge any facts throwing light upon anybody's intentions, except that "the defendants did not have 10,000 bushels of corn to deliver to King & Co. at that time," and that King & Co. "never, at any time, requested or demanded the delivery, neither did they offer to deliver corn to fill" the contract. If he means they never so requested of or offered to the defendants, it is not very cogent, if of or to the other parties to the sale or purchase, it is not clear how he knows.

These opinions and assertions of what he could not know can not be considered as contradicting the testimony of Southworth and Penfield as to what was done and intended. The only other evidence in the case, besides the telegrams mentioned, were some letters of Luckey and a telegram, which were not pertinent to the question.

We think, therefore, that the verdict was clearly unsupported by the evidence, and if not the result of prejudice must be attributed to improper testimony admitted and erroneous instructions given, as above indicated. The judgment will be reversed and the cause remanded.

*Reversed and remanded.*